UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZANE HUBBARD, | No.  1:13-cv-01758-LJO-JLT (HC) |
| Petitioner, | **FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| CONNIE GIPSON, | **[TWENTY-ONE DAY OBJECTION DEADLINE]** |
| Respondent. | |

In 2011, the Kern County Superior Court sentenced Petitioner to a term of 39 years to life following his conviction for multiple armed, gang-related offenses stemming from a kidnapping, carjacking, and robbery incident.  In this action, Petitioner claims a pretrial lineup was unconstitutionally suggestive, a witness' testimony was inadmissible, and the prosecutor committed misconduct.  Petitioner argues the conviction should be set aside.  The Court disagrees and recommends the petition be **DENIED.**

I.      **PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation serving an indeterminate 39-years-to-life sentence pursuant to a judgment of the Superior Court of California, County of Kern, following his 2011 conviction for kidnapping, carjacking, and robbery with a firearm for the benefit of a criminal street gang.  People v. Ramirez, 2013 WL 943873, at *1 (Cal. Ct. App. March 12, 2013).

1

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA affirmed in a reasoned opinion. Id. Petitioner next filed a petition for review in the California Supreme Court. The petition was summarily denied.

Subsequently, Petitioner filed ten habeas petitions in the Kern County Superior Court. All ten petitions were denied. Petitioner filed three habeas petitions in the Fifth DCA which were also denied. Last, Petitioner filed a habeas petition in the California Supreme Court. That petition was also denied.

On October 23, 2013, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. (Doc. No. 1). He filed a First Amended Petition ("FAP") on December 6, 2013. (Doc. No. 9.) Respondent filed an answer on September 2, 2015. (Doc. No. 41). Petitioner did not file a Traverse to Respondent's answer.

## II.   FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

The Vargas incident formed the basis of the charges set forth in counts 7 through 12 against both Ramirez and Hubbard.

On April 22, 2010, Vargas was driving his red Mustang on Texas Street when he approached Christina Silvas and asked if he could buy some marijuana from her. Silvas told Vargas to come back in an hour. Silvas then told her boyfriend, Ramirez, that a man in a red Mustang was following her.

Vargas returned in one hour as instructed. Ramirez came out of a house and approached Vargas, asking him for a ride so he could deliver some keys to a truck. Vargas thought Ramirez was Silvas's brother and agreed to give Ramirez a ride. During the ride, they picked up Hubbard and returned to where they had started. Ramirez was in the front seat with Vargas; Hubbard was in the backseat. At this point, both Ramirez and Hubbard pulled out guns and took Vargas's hat, jacket, identification, CD's, and other items. Ramirez pointed the gun at Vargas and said, "Don't move," or he would shoot.

Ramirez and Hubbard ordered Vargas to get into the trunk of the Mustang. Vargas resisted, but Ramirez stated he would shoot Vargas unless Vargas complied. Vargas got into the trunk and the car sped away. Vargas remained in the trunk for about 30 minutes, during which time he was worried he would be shot when the car stopped. Vargas was taken out of the trunk of the car and left on a rural dirt road. He walked about 30 minutes to a farmhouse and used the phone there to call police.

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

Vargas identified Ramirez and Hubbard from photo lineups and also at trial. He was certain that Ramirez and Hubbard were the two men who had robbed and kidnapped him.

On April 23, 2010, officers searched Silvas's residence and found identification and items belonging to Vargas.

On April 25 Ramirez was spotted by police. He fled and was chased into a residence on South Owens Street. Ramirez hid in the attic and was extracted by force. After he was subdued, Silvas arrived on the scene and was yelling hysterically that Ramirez was her boyfriend.

Silvas told police that two of her friends, whom she called Spooky and Menace, had come to her house after the robbery and had given her Vargas's items that were found in her residence; Menace also showed her money taken from Vargas's wallet. Silvas said Menace was her boyfriend and identified Ramirez as Menace. Silvas also identified Hubbard from a photo and stated Hubbard was Spooky.

**Trial**

Ramirez was charged with kidnapping to commit robbery (count 1), kidnapping to commit carjacking (count 2), criminal threats (count 3), dissuading a witness from testifying (count 4), solicitation to commit robbery (count 5), being an active participant in a criminal street gang (count 6), and being a felon in possession of a firearm (count 13). Ramirez and Hubbard were charged with kidnapping to commit robbery (count 7), carjacking for the purpose of kidnapping (count 8), assault with a semiautomatic firearm (count 9), criminal threats (count 10), active participation in a criminal street gang (count 11), and being a felon in possession of a firearm (count 12).

It also was alleged that the offenses set forth in counts 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, and 13 were committed for the benefit of a criminal street gang. In addition, firearm enhancements were alleged as to counts 1, 2, 3, 4, 6, 7, 8, 9, 10, and 11. As to 12 counts against Ramirez and all six counts against Hubbard, it was alleged that both had served two prison terms.

At trial Officer Eric Littlefield testified as a gang expert. Littlefield testified that Varrio Bakers is an active gang in Bakersfield with several hundred members. Its primary activities include weapons violations, assaults with a deadly weapon, witness intimidation, robbery, car thefts, carjacking, murders, and narcotics sales. The Varrio Bakers gang claims the area between Brundage Lane to the south, Dr. Martin Luther King Boulevard or Washington Street to the east, H Street or Eye Street to the west, and East Truxtun to the north as their turf.

Littlefield opined that both Ramirez and Hubbard were active members of the Varrio Bakers gang. He based this opinion on their gang tattoos, their history of offenses, and their prior contacts with police where both claimed membership in the Varrio Bakers gang.

In response to a hypothetical based upon the offenses committed against Deluna, Littlefield opined that the offenses would benefit the gang because they involved use of a firearm, victimization of others, and theft of the victim's vehicle, which could be used in the commission of other crimes. In response to a second hypothetical based upon the offenses committed against Vargas, Littlefield opined that these offenses would benefit the gang for the same reasons as the first

3

hypothetical, plus the offenses were committed by gang members acting in concert. The parties stipulated that Varrio Bakers was a criminal street gang.

The jury convicted Ramirez and Hubbard of all charges, and all enhancements were found true except for the firearm allegation appended to count 4. In a court trial, the prior prison enhancements were found true.

### The Sentences

The trial court sentenced Ramirez to an indeterminate term of 37 years to life, plus 16 years, and a determinate term of 24 years. It sentenced Hubbard to an indeterminate term of 15 years to life and a determinate term of 24 years 4 months.

People v. Ramirez, 2013 WL 943873, at *1–3.

## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State

4

court proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003); <u>Williams</u>, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), citing <u>Williams</u>, 529 U.S. at 405-406 (2000).

In <u>Harrington v. Richter</u>, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." <u>Harrington</u>, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. <u>Davis v. Woodford</u>, 384 F.3d at 637, citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. at 520; <u>Jeffries v. Wood</u>, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." <u>Id.</u>; <u>see Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), <u>cert.denied</u>, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. <u>See Ylst v.</u>

5

1  Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

2  2004).  "[A]lthough we independently review the record, we still defer to the state court's

3  ultimate decisions."   Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

4          The prejudicial impact of any constitutional error is assessed by asking whether the error

5  had "a substantial and injurious effect or influence in determining the jury's verdict."   Brecht v.

6  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120

7  (2007)(holding that the Brecht standard applies whether or not the state court recognized the error

8  and reviewed it for harmlessness).

9  **IV.     REVIEW OF CLAIMS**

10         The instant petition presents the following grounds for relief: (1) Petitioner claims the

11  victim's identification of Petitioner in a pretrial photographic lineup was unduly suggestive and

12  violated his due process rights; (2) He alleges a witness' testimony was inadmissible and should

13  have been excluded; and (3) He alleges the prosecutor committed misconduct by allowing

14  inadmissible evidence, failing to disclose inducements, launching harassment by prison officials,

15  applying a sentence outside of jurisdiction, and acting out of retaliation and discrimination against

16  the "Varrio Bakers and South Side Bakers Street gang members."

17         A.     Suggestive Lineup

18         Petitioner contends that the victim's identification of Petitioner should be stricken due to

19  the unduly suggestive nature of the photo lineup shown to the victim by the police.  The claim

20  was presented on direct appeal to the Fifth DCA, where it was rejected in a reasoned decision as

21  follows:

22         Hubbard contends the photo lineup used to identify him was unduly suggestive
           and unreliable, thus his convictions must be reversed. We disagree that his
23         convictions must be reversed.

24         The trial court held an Evidence Code section 402 hearing to decide whether
           Vargas's identification of Hubbard as one of the perpetrators would be admissible.
25         The trial court found that the photographic lineup was suggestive because only one
           picture, Hubbard's, showed a person with tattoos on his face; the other five photos
26         depicted people without facial tattoos. The trial court also found, however, that the
           photo lineup did not taint Vargas's in-court identification of Hubbard.
27
           In ruling that the photo lineup had not tainted Vargas's in-court identification of
28

6

Hubbard, the trial court noted that Vargas had given a detailed description of Hubbard to the police immediately after the incident and had had an opportunity to view Hubbard during the incident, when it was daylight. The physical characteristics described by Vargas prior to being shown the photo lineup were consistent with Hubbard's physical characteristics. At the Evidence Code section 402 hearing, with Hubbard not present, Vargas accurately described Hubbard from his recollection of the incident. He was subject to cross-examination as to his recollection and description. He accurately described physical characteristics of Hubbard, even when a question suggested an erroneous answer, and accurately described physical attributes of both Ramirez and Hubbard. He later identified both Hubbard and Ramirez in court.

In determining the admissibility of evidence, the trial court has broad discretion. Under Evidence Code section 402, a trial court's ruling on admissibility implies whatever finding of fact is prerequisite thereto. A separate or formal finding is unnecessary unless otherwise required by statute. On appeal, a trial court's decision to admit or not admit evidence following a hearing under Evidence Code section 402 is reviewed for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196–197.)

In reviewing Hubbard's contention that the photo lineup tainted any identification of him as a perpetrator, we accept the trial court's resolution of disputed facts and inferences, as well as its evaluation of the credibility of witnesses. (*People v. Whitson* (1998) 17 Cal.4th 229, 248.) We """"give great weight to the considered conclusions' of a lower court that has previously reviewed the same evidence." [Citations.]"' (*Ibid.*)

This court, however, independently reviews a trial court's ruling that an identification procedure was not unduly suggestive or tainted a later identification. (*People v. Avila* (2009) 46 Cal.4th 680, 698–699.) In considering whether the totality of the circumstances suggests a misidentification because an eyewitness has been subjected to undue suggestion, a court looks to numerous factors, such as (1) the opportunity of the witness to view the suspect at the time of the offense; (2) the accuracy of the witness's prior description of the suspect; (3) the level of certainty demonstrated at the time of identification; (4) the witness's degree of attention at the time of the incident; and (5) the lapse of time between identification and the incident. (*People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*).)

The evidence established that Vargas accurately described Hubbard physically shortly after the incident and before being presented with a photo lineup; Vargas had the opportunity to observe Hubbard somewhat closely during the incident; and Vargas accurately described Hubbard's physical characteristics when cross-examined at the Evidence Code section 402 hearing, even answering accurately when a question suggested an incorrect response. Vargas described Hubbard's distinctive facial tattoos in his initial statements to police. Vargas also was very certain of his identification of Hubbard. These facts and the totality of the circumstances do not suggest an in-court misidentification by Vargas. (*People v. Arias* (1996) 13 Cal.4th 92, 168.)

Once it is established that an identification procedure used was unnecessarily suggestive, exclusion of identification testimony is required only if the suggestive identification procedures tainted the in-court identification. (*People v. Yeoman* (2003) 31 Cal.4th 93, 123.) Hubbard has failed to meet his burden of establishing that the photo lineup tainted Vargas's in-court identification, even though the trial

1  court concluded the photo lineup was suggestive. (*Cunningham, supra*, 25 Cal.4th
2  at pp. 989–990.)

3  In light of these principles and the totality of the circumstances, we conclude the
   trial court did not err in concluding the photo lineup did not taint the in-court
4  identification of Hubbard.

5  People v. Ramirez, 2013 WL 943873, at *3-4.

6          i.      Federal Standard and Analysis

7          Due process prohibits the admission of eyewitness identifications obtained after police

8  have arranged identification procedures so impermissibly suggestive as to give rise to a very

9  substantial likelihood of irreparable misidentification. Perry v. New Hampshire, ___ U.S. ___,

10  132 S. Ct. 716, 720 (2012); Simmons v. United States, 390 U.S. 377, 384 (1968). Courts employ

11  a two-part analysis to evaluate whether an identification has been irreparably tainted by an

12  impermissibly suggestive pretrial identification procedure. See United States v. Love, 746 F.2d

13  477, 478 (9th Cir. 1984). The first step is to determine whether the pretrial identification was

14  unduly suggestive. Simmons, 390 U.S. at 384. This may occur when a photographic

15  identification procedure "emphasize[s] the focus upon a single individual," thereby increasing the

16  likelihood of misidentification. United States v. Bagley, 772 F.2d 482, 493 (9th Cir. 1985).

17  Whether an identification procedure was unduly suggestive is a fact-specific determination,

18  which may involve consideration of the size of the array, the manner of its presentation by the

19  officers, and the details of the photographs themselves. Id.

20          If the identification procedure was unduly suggestive, the second step requires a

21  determination of whether the totality of the circumstances surrounding the eyewitness's

22  identification indicates that the identification was nonetheless reliable. Neil v. Biggers, 409 U.S.

23  188, 199 (1972); Simmons, 390 U.S. at 383. Factors considered in assessing reliability include:

24  (1) the opportunity to view the criminal at the time of the crime; (2) the witness's degree of

25  attention; (3) the accuracy of the prior description; (4) the witness's level of certainty at the

26  confrontation; and (5) the length of time between the crime and the identification. Neil, 409 U.S.

27  at 199-200; Manson v. Brathwaite, 432 U.S. 98, 114 (1977). The corrupting effect of the

28  suggestive identification itself is to be weighed against these factors. Id. Where "the indicia of

8

1  reliability are strong enough to outweigh the corrupting effect of the police arranged suggestive

2  circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately

3  determine its worth." Perry, 132 S. Ct. at 720.

4         Further, any possible prejudice that the defendant may have suffered from suggestive

5  identification procedures may be mitigated by cross-examination and other courtroom safeguards.

6  See Simmons, 390 U.S. at 384 (danger that photo lineup technique may result in conviction based

7  on misidentification may be lessened by cross-examination at trial).

8         Considering the totality of the circumstances here, in particular, the factual findings made

9  by the trial court and confirmed by the Fifth DCA, it is clear that Petitioner is not entitled to relief

10  on his improper identification claim.  The state court found Petitioner's photograph to be

11  suggestive because it was the only one depicting an individual with facial tattoos; however, the

12  state court reasonably determined that the photo lineup did not taint the in-court identification.  It

13  is apparent that the victim had observed Petitioner closely during the robbery.  Shortly after the

14  incident and prior to being shown the lineup, the victim had provided an accurate description of

15  Petitioner.  The victim had described Petitioner's distinctive facial tattoos prior to the lineup.  In

16  addition, the victim was highly certain of his identification.  Finally, the victim was cross-

17  examined concerning the identification and he consistently and accurately described the physical

18  appearance of Petitioner.

19         Based on the foregoing, Petitioner has failed to demonstrate that the state court rejection

20  of his claim was contrary to clearly established Supreme Court precedent, or that the state court's

21  decision was an unreasonable application of the factors noted above.  Therefore, the claim should

22  be denied.

23         B.    Witness Testimony

24         Petitioner next claims that the testimony of witness Ms. Silvas was inadmissible and

25  should have been excluded.  Petitioner claims: (1) Silvas was granted immunity and this fact was

26  not disclosed to the defense; (2) Silvas' rights were violated because she was detained and

27  coerced into testifying; and (3) Silvas provided conflicting testimony.

28         This claim was presented to the California Supreme Court in a state habeas petition and

9

1  the claim was summarily rejected.  In cases such as this where the state court decided an issue on

2  the merits but provided no reasoned decision, federal courts conduct "an independent review of

3  the record . . . to determine whether the state court [was objectively unreasonable] in its

4  application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000),

5  abrogated on other grounds, Lockyer, 538 U.S. at 75-76; see also Harrington, 562 U.S. at 98

6  ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's

7  burden still must be met by showing there was no reasonable basis for the state court to deny

8  relief"); Cullen, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary

9  denial").

10      Here, Petitioner first argues that Silvas testified under a grant of immunity that wasn't

11  disclosed to the defense.  Respondent correctly argues that this claim is meritless.  As Respondent

12  points out, Silvas invoked her Fifth Amendment rights at trial and was then given use immunity.

13  (RT[2] 616-630.)  This was done in court in front of all parties.  (RT 628-30.)  Thus, Petitioner's

14  argument that the grant of immunity was not disclosed is frivolous.

15      Petitioner next contends that Silvas' rights were violated when she was detained, coerced,

16  and held to answer.  This does not give rise to a federal claim, since Petitioner has no standing to

17  raise a witness' Fifth Amendment rights.  Respondent is correct that the due process clause is

18  implicated "only when the Government activity in question violates some protected right of the

19  Defendant."  Hampton v. United States, 425 U.S. 484, 490 (1976).  To the extent Petitioner

20  contends that his due process rights were violated because a witness' testimony was coerced, the

21  claim fails.  "There is no clearly established Supreme Court law that allows [a petitioner] to

22  exclude evidence of a witness' confession on the basis that the witness' constitutional right to be

23  free from coercion was violated."  Spencer v. Biter, 597 Fed. Appx. 421, 422 (9th Cir. 2015).

24  Moreover, Petitioner provides no evidentiary support for his conclusory argument that Silvas'

25  testimony was coerced.  Broad, conclusory allegations of unconstitutionality are insufficient to

26  state a cognizable claim.  Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995).

27

28  _____
[2] "RT" refers to the Reporter's Transcript on Appeal.

10

In addition, Petitioner's claim that Silvas' testimony should have been excluded because she gave conflicting statements should be rejected. There is no clearly established Supreme Court precedent that requires exclusion of conflicting witness testimony. In fact, the Supreme Court has stated that "where there is a direct conflict of testimony upon a matter of fact, the question must be left to the jury to determine." Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339 (1933).

For the foregoing reasons, Petitioner fails to demonstrate that the state court rejection of his claim was unreasonable. The claim should be denied.

C.      Prosecutorial Misconduct

In his final claim for relief, Petitioner alleges the prosecutor committed misconduct by allowing inadmissible evidence, failing to disclose inducements, launching harassment by prison officials, applying a sentence outside of jurisdiction, and acting out of retaliation and discrimination against the "Varrio Bakers and South Side Bakers Street gang members." The claim as it relates to the nondisclosure of inducements, and harassment of Petitioner by law enforcement and prison staff were dismissed by the Court as unexhausted. (Doc. No. 30.)

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667 (1985)). Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial, i.e., that absent the alleged impropriety, the verdict probably would have been different.

Regarding a prosecutor's solicitation of inadmissible evidence, the admission of evidence in a state criminal proceeding is not subject to federal habeas review unless a specific federal constitutional guarantee is violated or the error is of such magnitude that the result is a denial of fundamental due process and the right to a fair trial. See Estelle, 502 U.S. at 67; Jefferies v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993). State law foundational and admissibility questions

11

1   raise no federal question.  Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995).  Here, the claim

2   concerns an issue of evidentiary error.  Therefore, Petitioner fails to raise a federal question.  In

3   addition, as previously discussed, there was nothing improper in the admission of the victim's

4   identification.

5          With respect to the claims that the prosecutor applied a sentence outside of jurisdiction,

6   and that the prosecutor acted out of retaliation and discrimination against Petitioner's criminal

7   street gang, Petitioner fails to present a cognizable claim.  The claims are completely conclusory

8   and unsupported by any facts.

9          Based on the foregoing, the claim of prosecutorial misconduct should be denied.

10   **V.     RECOMMENDATION**

11          Accordingly, the Court RECOMMENDS that the First Amended Petition for Writ of

12   Habeas Corpus (Doc. 1), be DENIED with prejudice on the merits.

13          This Findings and Recommendation is submitted to the United States District Court Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

15   Local Rules of Practice for the United States District Court, Eastern District of California.

16   **Within 21 days** after being served with a copy of this Findings and Recommendation, any party

17   may file written objections with the Court and serve a copy on all parties.  Such a document

18   should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

19   to the Objections shall be served and filed within 10 days (plus three days if served by mail) after

20   service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to

21   28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the

22   specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst,

23   951 F.2d 1153 (9th Cir. 1991).

24

25   IT IS SO ORDERED.

26      Dated:   __September 22, 2016__              _____/s/ Jennifer L. Thurston_____
                                                    UNITED STATES MAGISTRATE JUDGE

27

28